UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO.

MARIA E. ORTIZ,

    Plaintiff,

vs.

WALMART INC., and JOHN DOE,

    Defendant.

_____/

**DEFENDANT'S NOTICE OF REMOVAL**

Defendant Walmart Inc., ("Wal-Mart"), by and through undersigned counsel, and pursuant to 28 U.S.C. §§ 1332, 1441 and 1446(b)(3) and Rule 81(c) of the Federal Rules of Civil Procedure, file this Notice of Removal removing to this Court the action filed in the 11th Judicial Circuit Court in and for Miami-Dade County, Florida, Case No. CACE-20-016229 (05), with full reservation of rights, exceptions and defenses, and in support thereof states:

**I.**     **Factual Background**

1. On or about October 1, 2020, Plaintiff commenced this action by filing a Complaint against Wal-Mart and "John Doe" in the 17th Judicial Circuit Court in and for Broward County, Florida. *See* Pl.'s Complaint attached as Ex. "A." The Complaint was served on Wal-Mart on October 14, 2020. *See* Affidavit of Service attached as Ex. "B."

2. Plaintiff Maria E. Ortiz alleges a claim for negligence against Wal-Mart in Count I of the Complaint, and against "John Doe" in Count II as a result of injuries she sustained on October 26, 2019 while she walked the aisles of the Wal-Mart store located at 1800 South University Drive, Miramar, Broward County, Florida. Moreover, in Count III, Plaintiff seeks to

hold Wal-Mart vicariously liable for the alleged negligence of the store manager. *See* Complaint (Ex. A).

3.  The Complaint alleges that Plaintiff Maria E. Ortiz was walking the aisle of the Wal-Mart store when she allegedly stepped on and slipped on what "Plaintiff believes…was a grape," and "suffered serious injuries." *See* Complaint (Ex. A) at ¶¶ 9, 11.

4.  Plaintiff alleges Wal-Mart breached three duties owed to her including a duty to maintain the premises in a reasonably safe condition, a duty to correct dangerous condition Wal-Mart knew or should have known about, and a duty to warn Plaintiff of dangerous conditions of which it had superior knowledge. *See* Complaint (Ex. A) at ¶ 14.

5.  Identically, Plaintiff alleges that the "John Doe" store manager breached non-delegable duties that Wal-Mart owed to Plaintiff, including a duty to maintain the store in a reasonably safe condition and a duty to warn Plaintiff of a unsafe and hazardous condition he knew or, in the exercise of due care, should have known about. *See* Complaint (Ex. A) at ¶ 21. Plaintiff alleges "the store manager" breached these duties by: failing to provide proper maintenance and care of the subject store (Ex. A at ¶ 22(a)); creating a dangerous condition on the subject premises (Ex. A at ¶ 22(b)); allowing the unsafe and hazardous condition to exist in the subject store (Ex. A at ¶ 22(c)); failing to correct or remedy the dangerous and hazardous condition, although he knew, or in the exercise of reasonable care should have known of (Ex. A at ¶ 22(d)); failing to provide adequate warnings and/or other reasonable notice (Ex. A at ¶ 22(e)); failing to have policies and procedures in place to adequately address preventing or remedying hazardous conditions (Ex. A

at ¶ 22(f)); and failing to adequately train and/or supervise his personnel in the subject store in maintaining a safe store and/or remedying hazardous conditions (Ex. A at ¶ 22(g)).[1]

6. Plaintiff specifically identifies "John Doe" in his capacity as the store manager on the date of Plaintiff's alleged incident in the Complaint. *See* Complaint (Ex. A) at ¶ 21-22.

7. Plaintiff's Complaint fails to allege that "John Doe" in his individual capacity owed Plaintiff a duty of care, or that he breached any duty of care in his individual capacity.

8. Plaintiff's Complaint also fails to allege any facts indicating that the "John Doe" store manager was even on the premises at the time the alleged incident occurred.

9. Plaintiff fraudulently joined "John Doe" store manager for the sole purpose of destroying diversity jurisdiction.

10. Plaintiff Maria E. Ortiz does allege that at all times material hereto she was a resident of Broward County, Florida. *See* Complaint (Ex. A) at ¶ 2.

11. Walmart Inc. is a Delaware corporation and maintains its principal place of business in Bentonville, Arkansas. *See* Florida Department of State, Division of Corporations, Detail by Entity Name attached as Ex. "C."

12. At the time of filing the instant lawsuit, Plaintiff filed a civil cover sheet estimating that her damages exceed $100,000.00. *See* Civil Cover Sheet as Ex. "D."

13. Furthermore, on February 11, 2020, Plaintiff sent a demand letter to Wal-Mart alleging that Plaintiff, among other things, underwent several procedures and therapies, that her

---

[1] As part of its Notice, and for reasons stated more thoroughly below, Wal-Mart respectfully requests that this Court dismiss Count II and Count III of Plaintiff's Complaint. Specifically, Count II, against the store manager, for fraudulent joinder and failure to state a claim upon which relief can be granted; and Count III, against Wal-Mart, because it inherently relies on Count II and because vicarious liability, although an element of negligence, is not a recognized cause of action under Florida Law.

doctor recommended her to get additional procedures, and that Plaintiff "continues to treat and incurred [sic] medical expenses." Moreover, Plaintiff's demand letter was accompanied by her alleged medical bills at that time in addition to future procedures Plaintiff agreed to, which exceeds $75,000.00. *See* Pl's Follow-up Demand Letter as Ex. "E."

14. Therefore, this Court has jurisdiction over this matter, and it is removable based on diversity of citizenship of the parties. The matter is removable based on diversity of citizenship because Plaintiff Ortiz and Wal-Mart are citizens of different states, the citizenship of "John Doe" is disregarded, and the amount in controversy exceeds $75,000.00—exclusive of interest, attorney's fees, and costs.

15. All State Court documents are attached as Ex. "F."

16. Wal-Mart reserves the right to raise all defenses and objections in this action after the action is removed to this Court.

## II.     Removal is Timely

17. In accordance with 28 U.S.C. § 1446(b)(1), Wal-Mart filed its Notice of Removal on November 13, 2020, within thirty (30) days of the date that it received or was served a copy of Plaintiff's filed Complaint. Plaintiff's Complaint is the initial pleading setting forth the claim for relief upon which Plaintiff's action is based. The thirty-day period, under Section 1446 (b)(1) commenced on October 14, 2020, when Plaintiff served her Complaint on Wal-Mart.

18. Venue is proper in this Court because the state court where Plaintiff filed her Complaint, the 17th Judicial Circuit in and for Broward County, Florida, is located in the City of Fort Lauderdale, which is within this Court's jurisdiction.

## III.    There is Complete Diversity Between the Parties

19. In accordance with 28 U.S.C. § 1332(a)(1), "[t]he district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of

$75,000.00, exclusive of interest and costs, and is between—citizens of different States." This action satisfies the complete diversity of citizenship requirement of 28 § 1332(a)(1).

### A. Citizenship of Walmart, Inc.

20. For purposes of 28 U.S.C. §§ 1332, 1441, a corporation is deemed to be a citizen of the State in which it is incorporated and of the State of its principal place of business. 28 U.S.C. § 1332(c). Wal-Mart, Inc. is and was a Delaware corporation, with its principal place of business in Arkansas. Wal-Mart Inc. is a publicly traded company on the New York Stock Exchange and traded under the symbol WMT. No publicly traded entity owns more than 10% of Wal-Mart Inc. Hence, Defendant is a citizen of only Delaware and Arkansas.

### B. Citizenship of Plaintiff Maria E. Ortiz.

21. Plaintiff Maria E. Ortiz was at all times material hereto a resident of Broward County, Florida. *See* Complaint (Ex. A) at ¶ 2. Although Plaintiff's Complaint does not specifically state Plaintiff's citizenship, "[i]t is well established that a party's residence is prima facie evidence of a party's domicile," and "[f]or purposes of diversity jurisdiction, a party's domicile is equivalent to his citizenship." Katz v. J.C. Penney Corp., 2009 WL 1532129, *3 (S.D. Fla.) (internal citations omitted).

22. Plaintiff Ortiz alleges that she is a resident of Broward County. *See* Complaint (Ex. A) at ¶ 2. Plaintiff's Broward County residence is prima facie evidence of her domicile which is equivalent to citizenship for purposes of establishing diversity jurisdiction. *See* Katz, 2009 WL 1532129 at *3.

### C. Citizenship of Store Manager "John Doe."

23. The Court should not consider the citizenship of Defendant "John Doe" in its determination of whether complete diversity exists. "In determining the existence of federal jurisdiction, the Court considers the complaint as it existed at the time the petition of removal was

filed." Tynes v. Target Corp., 12-24302-CIV-MORENO, 2013 WL 1192355, at *1 (S.D. Fla. Mar. 22, 2013) (citing Landmark Tower Associates v. First National Bank of Chicago, 439 F.Supp. 195 (S.D.Fla.1977). As a result, "[t]he Court must base its removability determination on the Complaint listing only "John Doe" as a second defendant." Id. "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a)…the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b). Thus, "'John Doe's' citizenship is disregarded as a fictitious defendant." See, e.g., Tynes, 2013 WL 1192355 at *1 (citing 28 U.S.C. § 1441(b)). Moreover, a motion for remand cannot be granted on the basis of "John Doe's" alleged citizenship. As noted more thoroughly below, even if Plaintiff were to identify the store manager by name, rather than as a fictitious defendant, there is no possibility that Plaintiff could prove a negligence cause of action against the store manager in his individual capacity.

> **D. Complete Diversity Between the Parties Exists Even If Plaintiff Were to Identify "John Doe" Because the Store Manager Was Fraudulently Joined for the Purpose of Destroying Diversity.**

24. The citizenship of the store manager "John Doe," (hereinafter identified as Hector Romero[2]), should be disregarded because Plaintiff's attempt to name him as a defendant is mere subterfuge to destroy otherwise valid diversity jurisdiction. Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011); Petigny v. Wal-Mart Stores E., L.P., 18-23762-CIV, 2018 WL 5983506, at *2 (S.D. Fla. Nov. 14, 2018).

25. In addition to disregarding the citizenship of a "John or Jane Doe," courts also disregard the citizenship of a fraudulently joined party. Stillwell, 663 F.3d at 1332. The doctrine

---

[2] Wal-Mart has identified the store manager of the incident store, #1511 located at 1800 South University Drive, Miramar, Broward County, on the day of the alleged incident, October 26, 2019, as store manager Hector Romero.

of fraudulent joinder provides an exception to complete diversity if the defendant can show by clear and convincing evidence that: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently plead jurisdictional facts to bring the resident defendant into state court. *See* Id. at 1332; *see also* Tynes, at *2.

26. The court must make its determination on whether a resident defendant has been fraudulently joined based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits submitted by the parties. *See* Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998).

27. The issue of whether there is no possibility the plaintiff can prove a cause of action against the resident defendant turns on whether liability can be imposed on the resident defendant. Tynes, at *4-5. When a defendant demonstrates that "there is no possibility that plaintiff can establish a cause of action against the resident defendant…the federal court must dismiss the non-diverse defendant and deny any motion to remand the matter back to state court." Florence v. Crescent Resources, LLC, 484 F.3d 1293, 1297 (11th Cir. 2007).

28. Regardless of whether Plaintiff specified the name of the store manager, Hector Romero, in the operative complaint or afterwards by way of an amendment—there is no possibility that Plaintiff can establish a cause of action against Mr. Romero individually.

29. It is well established under Florida law that, in order to be individually liable, "a corporate official must have committed or participated in the tort." De Varona v. Disc. Auto Parts, LLC, 860 F. Supp. 2d 1344, 1347 (S.D. Fla. 2012); *see* Siciliano v. Target Corp., 14-80459-CIV, 2014 WL 12461368, at *2 (S.D. Fla. Aug. 4, 2014). Indeed, "[a] corporate agent or employee may not be held personally liable simply because of his general administrative responsibility for performance of some function of his or her employment—he or she must be actively

negligent." White v. Wal-Mart Stores E., LP, 220CV466FTM38NPM, 2020 WL 5946452, at *1 (M.D. Fla. Oct. 7, 2020) (*quoting* McElveen v. Peeler, 554 So.2d 270, 272 (Fla. 1st DCA 1989); *see also* De Varona, 860 F. Supp. 2d at 1347; Accordino v. Wal-Mart Stores E., L.P., 3:05CV761J32MCR, 2005 WL 3336503, at *3 (M.D. Fla. Dec. 8, 2005) ("the defendant must have committed the alleged tortious act in his individual capacity"). Significantly, "[i]n Florida, there is no recognized cause of action for an in absentia claim of negligent failure to maintain [a] store because Florida law requires that a corporate officer or agent be personally liable for negligence only if he or she participates in the tortious conduct." Stephens v. Petsmart, Inc., 809-CV-815-T-26TBM, 2009 WL 3674680, at *2 (M.D. Fla. Nov. 3, 2009); *see* Petigny, 2018 WL 5983506, at *2.

30.  For example, in Tynes, the plaintiff, a Florida resident, filed a negligence suit against Target, a foreign corporation, and "John Doe," an unnamed employee. Tynes, at *1. Target removed the case to federal court, invoking its diversity jurisdiction. Id. In response, the plaintiff sought to remand the case because she had since identified the "John Doe"—Wilber Hernandez—through discovery, and claimed he was a Florida resident. Id. Despite discovering the name of the unidentified defendant, the court nevertheless denied plaintiff's motion to remand. Id. at *2. In support of its holding, the court found that "there was little possibility that the plaintiff can prove a cause of action in negligence against the individual Target employee…[because] [t]he plaintiff failed to allege any <u>individual duty was owed</u> or that the tort in question was committed in the store manager's <u>individual capacity</u>." Id. (emphasis added).

31. In De Varona, the plaintiff, a Florida citizen, filed a negligence action against a Virginia corporation, Advance Auto Parts. De Varona, 860 F. Supp. 2d at 1345. Plaintiff amended her complaint to name the store manager, a Florida resident, and assert a separate count of

negligence against him. Id. Particularly, the plaintiff alleged that the manager had a duty to use ordinary care to maintain the premises in a reasonably safe condition and breached this duty by failing to remove the condition or warn plaintiff of its existence. Id. Subsequently, defendant removed the action to federal court, arguing that the manager's citizenship should be disregarded because he was fraudulently joined for the sole purpose of avoiding federal jurisdiction. Id. at 1346. To support its notice of removal, Advance Auto Parts proffered an affidavit from the manager denying any personal responsibility for the accident, declaring that he was not in the parking lot when the alleged accident occurred, that he could not see the parking lot from his vantage point in the store, and that he had no knowledge of any hazardous condition in the parking lot on the date of the incident. Id. at 1346–47. Since the plaintiff relied solely on the "unsupported allegations made previously in her complaint," and "provided no facts showing that [the manager] played any role in her injuries," the court denied plaintiff's motion to remand finding that there was no possibility that the manager could be personally liable. Id. In support of its holding, the court emphasized that the manager cannot incur personal liability for the corporation's torts merely by reason of his official capacity or managerial responsibilities. See Id. (*citing* Orlovsky v. Solid Surf, Inc., 405 So. 2d 1363, 1364 (Fla. 4th DCA 1981); *see also*; Siciliano v. Target Corp., 14-80459-CIV, 2014 WL 12461368, at *2 (S.D. Fla. Aug. 4, 2014) (finding manager could not be personally liable for alleged failure to enforce [store] policies and procedures and failure to properly train staff because "it is well established under Florida law that [the manager] does not incur personal liability for the corporation's torts merely by reason of the officer's official character"); Boyd v. Petco Animal Supplies Stores, Inc., 3:18-CV-639-J-32PDB, 2018 WL 4360621, at *2 (M.D. Fla. Sept. 13, 2018) ("[The manager] does not incur personal liability for the corporation's torts

merely by reason of the officer's official character… rather, this appears to be a run of the mill slip and fall case in which the store manager individually has no liability").

32. In Petigny, an almost identical slip-and-fall case, the plaintiff, a Florida resident, sued Wal-Mart and two resident store managers, Reinard and Pericles, in state court for injuries plaintiff allegedly sustained when she slipped and fell on grapes in a Wal-Mart store. Petigny, at *1. In the complaint, plaintiff alleged that each manager breached duties that the store owed to its business invitees. Thereafter, Defendants removed the case on the basis of diversity jurisdiction, contending that plaintiff fraudulently joined the store managers to destroy diversity. Petigny, at *1. Importantly, the court found that there was no possibility that plaintiff could establish a claim against Reinard because his sworn declaration stated that he was not present on the day of the incident, emphasizing that Florida law does not recognize an *in absentia* claim of negligent failure to maintain a store. *See* Id. at *2; *see also* Stephens, 2009 WL 3674680, at *2 (reasoning, to be personally liable, store manager "necessarily must be present in the store at the time of the accident in order to know of the hazardous condition and personally participate in the events leading up to the accident") (emphasis added). Although manager Pericles was in the store on the day, she too provided a sworn declaration, stating that: she was not in the area where the incident occurred prior to plaintiff's fall or during the incident; she had no prior knowledge of the dangerous condition; and she did not participate in the incident. Id. at *3. Plaintiff, on the other hand, did not provide any evidence to the contrary. Thus, the court emphasized that "[a]bsent evidence she personally participated in tortious conduct, Ms. Pericles cannot be held personally liable for negligence under Florida law." As a result, the court held that "defendant has again met its high burden of establishing fraudulent joinder" and refused to consider Pericles's citizenship. Id.

33.     In the case at hand, while Hector Romero was Wal-Mart's store manager on the day of the incident—there is no possibility that Plaintiff Ortiz can prove a negligence cause of action against Mr. Romero in his individual capacity. Much like the plaintiffs in Tynes and De Varona, Plaintiff Ortiz failed to allege that Mr. Romero owed any individual duty of care to Plaintiff or that the tort in question was committed in Romero's individual capacity. Indeed, Plaintiff alleges the exact opposite—that Mr. Romero, "as the store manager for Wal-Mart, owed a duty to Plaintiff," and "as the store manager…breached his duty of care." *See* Complaint (Ex. A) at ¶ 21-22 (emphasis added). But as the Florida courts have consistently reiterated, a store manager cannot incur personal liability for the corporation's torts merely by reason of his official capacity or simply because of his general administrative responsibility for performance of some function of his employment. Plaintiff has not and cannot prove that Mr. Romero personally participated in the tortious conduct or was actively negligent. Significantly, akin to manager Reinard in Petigny, Mr. Romero was not present in the store when the alleged incident occurred. The evidence shows that the alleged incident occurred at approximately 6:15pm on October 26, 2019. The evidence will also show that Mr. Romero left the store that day at approximately 2:30pm. Because Mr. Romero was not present at the time of the incident in order to know of the hazardous condition and personally participate in any events leading up to the incident, this Court should find that there is no possibility Plaintiff Ortiz can prove Mr. Romero was personally liable.

34.     As part of its Notice, Wal-Mart respectfully requests that this Court dismiss Count II and Count III of Plaintiff's Complaint. Specifically, Count II, against the store manager, for fraudulent joinder and failure to state a claim upon which relief can be granted; and Count III, against Wal-Mart, because it inherently relies on Count II and because vicarious liability, although an element of negligence, is not a recognized cause of action under Florida law. Count II seeks to

name the store manager as a party and Count III seeks to hold Wal-Mart vicariously liable for the Manager's alleged negligence. As this Notice of Removal shows, Plaintiff Ortiz cannot maintain a valid cause of action against the store manager because Florida law requires that a manager be actively negligent. As there is no possibility that Plaintiff can maintain a cause of action against Mr. Romero, Wal-Mart respectfully requests both Count II and Count III of the Complaint be dismissed.

### IV.     The Amount in Controversy Requirement Has Been Met

35.    The amount in controversy exceeds $75,000.00.  Although Plaintiff's Complaint does not specify an amount in controversy, it is clear from the civil cover sheet, Complaint, and medical bills, that the Plaintiff's claimed damages exceed the jurisdictional minimum in this Court of $75,000.00.  *See* Katz, 2009 WL 1532129 at *5 (concluding the defendant met its jurisdictional burden of establishing the amount in controversy based on the medical bills cited in plaintiff's pre-suit demand); *see also* Mick v. De Vilbiss Air Power Co., 6:10-CV-1390-ORL, 2010 WL 5140849, at *1 (M.D. Fla. Dec. 14, 2010) (relying on pre-suit demand letter seeking $175,000.00 in damages as competent evidence of amount in controversy and denying Plaintiff's motion to remand).

36.    "In the Eleventh Circuit, a district court may consider the complaint and any later received paper from the Plaintiff as well as the notice of removal and accompanying documents when deciding upon a motion to remand." Katz, 2009 WL 1532129, at *4 (S.D. Fla. June 1, 2009) (citing Lowery v. Alabama Power Co., 483 F. 3d 1184, 1213-1214 (11th Cir. 2007)). "Additionally, a district court may consider evidence outside of the removal petition if the facts therein existed at the time of removal." Id. (citing Williams v. Best Buy Co., 269 F.3d 1316, 1320 (11th Cir. 2001) and Sierminski v. Transouth Financial Corp., 216 F.3d 945, 949 (11th Cir. 2001) and Sierminski v. Transouth Financial Corp., 216 F.3d 945, 949 (11th Cir. 2000)).  "Therefore,

pre-suit settlement offers and demands may be considered in evaluating whether a case has been properly removed." Id.

37. The relevant portions of Plaintiff's medical records conclusively establish that the amount in controversy exceeds the $75,000.00 jurisdictional minimum.

38. Specifically, the medical expenses and procedures that Plaintiff has undergone thus far and has agreed to undergo exceed $75,000.00. *See* Ex. "E." Furthermore, the Complaint and the civil cover sheet confirm that Plaintiff Maria E. Ortiz alleges that she has sustained serious injuries and estimates that her damages total or will total approximately $100,000.00. *See* Ex. "A"; *see also* Ex. "D." In addition, Plaintiff's Complaint further alleges damages for, among other things, "pain and suffering, disability, disfigurement, expense of hospitalization, medical and related care and treatment, loss of earnings, loss of ability to earn money," and that her "losses are either permanent or continuing in nature, and Plaintiff will suffer these losses in the future." *See* Ex. "A" at ¶ 19.

39. Plaintiff's past medical expenses alone total approximately $72,000.00. Importantly, this total only reflects the amount of Plaintiff's medical bills for medical care received from the time of the incident through April 2020. Therefore, since Plaintiff has alleged that she is continuing to receive treatment and is claiming future damages, Plaintiff's medical expenses will continue to increase as well. Furthermore, Plaintiff's doctors have recommended—and Plaintiff has agreed—to undergo further medical and surgical procedures, substantiating the fact the amount in controversy has been satisfied. For example, Plaintiff's doctor referred her for a procedure "which has an estimated cost of approximately $55,000.00-$85,000.00," to which Plaintiff stated that she "wishes to proceed with the surgery." *See* Ex. "E." Another doctor treating Plaintiff also recommended procedures, stating that "[t]he approximate cost associated with an [one] is $1100,

[two] is $5200, [three] is $4500, and [four] is $50,000 to $120,000." The total of the amount of just these future procedures that Plaintiff has agreed to undergo exceed $100,000.00, even if you only included the base estimate in the calculation. *See* Ex. "E."

40. Notably, the fact that the amount in controversy exceeds $75,000.00 is buoyed by Plaintiff seeking lost wages and future medical expenses. *See* Ex. "A" at ¶ 19.

41. Plaintiff's aforementioned representations sufficiently and conclusively establish that, by a preponderance of the evidence, the amount in controversy exceeds the jurisdictional threshold of $75,000.00 for this Court to maintain and retain jurisdiction. The decisions of several district courts support this conclusion.

42. For example, the court in Katz v. J.C. Penney Corp. held that the defendant seeking removal had sufficiently established that the amount in controversy was satisfied based on information included in Plaintiff's pre-suit demand package. 2009 WL 1532129 at *4. Here, Plaintiff's demand letter also sufficiently establishes that the amount in controversy is satisfied. *See* Ex. "E."

43. District courts consistently found that the amount in controversy is met where it is shown that a plaintiff's pre-suit demand letter represented that plaintiff's past medical bills exceeded $75,000.00. For example, in Stramiello v. Petsmart, Inc., the court determined that the defendant successfully met its burden of proving the amount in controversy was in excess of $75,000.00 where the plaintiff's medical bills alone totaled $108,351.92. Much like Plaintiff Ortiz in the instant matter, the plaintiff in Stramiello alleged that his injuries were permanent and that he would "seek recovery of future medical expenses and significant pain and suffering damages." Id. Because the court found that defendant demonstrated complete diversity and that the amount

in controversy exceeded the jurisdictional minimum, the court ultimately denied the plaintiff's motion to remand. Id. at *5.

44. Moreover, in Wilson v. Target Corp., plaintiff's pre-suit demand letter revealed she had sustained over $100,000.00 in past medical expenses and would suffer an additional one million dollars in future medical expenses due to an alleged accident. Wilson v. Target Corp., 2010 WL 3632794, at *4 (S.D. Fla. 2010). There, the court denied plaintiff's motion to remand, despite acknowledging that plaintiff did not specify the exact amount of damages sought in her complaint, because it found that plaintiff's pre-suit demand letter and the unspecified damages in his complaint were enough to determine by a preponderance of the evidence that the amount in controversy surpassed $75,000.00. *Id*.

45. Here, Plaintiff's demand letter and attached medical documents represent an honest assessment that her claimed damages exceed $75,000.00 because it is based on Plaintiff's past medical procedures and medical bills, in addition to medical procedures Plaintiff has agreed to undergo. *See* Katz, 2009 WL 1532129, at *5. Importantly, this reflects the amount at issue before considering Plaintiff's medical expenses subsequent to April 2020, her lost wages, or other damages claimed by Plaintiff in her Complaint. *See* Ex. "A."

46. As in Katz, Stramiello, and Wilson, here, Plaintiff's past medical expenses and the medical procedures she agreed to undergo far exceed $75,000.00—exclusive of medical expenses Plaintiff incurred subsequent to April 2020, loss of earning capacity, and other damages alleged in Plaintiff's Complaint. This evidence sufficiently establishes that Plaintiff's claimed damages exceed $75,000.00. As a result, Wal-Mart has demonstrated by a preponderance of the evidence that the amount in controversy in this matter exceeds the jurisdictional minimum required, therefore rendering removal appropriate.

## V. Conclusion

47. As Wal-Mart has timely filed its Notice of Removal and met this Court's jurisdictional requirement, this Court should permit the removal of Plaintiffs' underlying state court action in keeping with 28 U.S.C. §§ 1332, 1441 and 1446. Upon filing of this Notice of Removal, Wal-Mart will promptly give written notice of the same to Plaintiffs, through their attorneys of record, and the Clerk of the Circuit Court.

WHEREFORE, by reasons of the foregoing, Wal-Mart respectfully requests that this Notice of Removal be accepted as adequate under federal law, and that Plaintiff's state court action, Case No. CACE-20-016229 (05), on the docket of the 17th Judicial Circuit Court in and for Broward County, Florida, be removed from that court to the United States District Court for the Southern District of Florida, Fort Lauderdale Division, and that this Court assume full and complete jurisdiction over the case issuing all necessary orders along with any other relief that the Court deems just and proper.

Respectfully submitted,

By:  /s/ *Darin A. DiBello*
Darin A. DiBello
Florida Bar No. 957615
Frantz Destin, Jr.
Florida Bar No. 109669
dibello@fasidibellolaw.com
perry@fasidibellolaw.com
destin@fasidibellolaw.com
jeffrey@fasidibellolaw.com
*Counsel for Defendant*
**FASI & DIBELLO, P.A.**
150 SE 2nd Ave, Suite 1010
Miami, FL 33131
Telephone: (305) 537-0469
Facsimile: (305) 503-7405

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by electronic mail on this  13th  day of November, 2020 to Brian Glatzer, Bernstein and Maryanoff, 15055 SW 122nd Ave., Miami, FL 33186; bdglatzer@bellsouth.net; Natalie@911injured.com.

                By:     /s/*Darin A. DiBello*
                           Darin A. DiBello